**NEIGHBORS OF CUDDY MOUNTAIN; Idaho Sporting Congress, Inc.; The Ecology Center, Plaintiffs–Appellants,**

v.

**David ALEXANDER, Supervisor, Payette National Forest; United States Forest Service, an agency of the U.S. Department of Agriculture, Defendants–Appellees,**

and

**Boise Cascade Corporation, Defendant–Intervenor.**

No. 01–35184.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 2, 2002.

Filed Sept. 5, 2002.

Thomas J. Woodbury, Boise, ID, for the plaintiffs-appellants.

John C. Cruden, Attorney General's Office, and Pamela S. West, Ellen J. Durkee, Tamara N. Rountree, Department of Justice, Washington, DC, for the defendants-appellees.

Bruce M. Smith, Moore Smith Buxton & Turcke, Chtd., and William R. VanHole, Boise Cascade Corp., Boise, ID, for the defendant-intervenor-appellee.

1. All citations to the Code of Federal Regulations are to the 1999 version, which applies to this case.

## OPINION

D.W. NELSON, Circuit Judge.

Plaintiff environmental groups Neighbors of Cuddy Mountain, The Ecology Center, and Idaho Sporting Congress (collectively, "Neighbors") appeal the district court's dismissal of their action challenging a timber sale on national forest land in Idaho. Neighbors asserts that the United States Forest Service ("Forest Service") violated the National Forest Management Act ("NFMA"), 16 U.S.C. §§ 1600–1687, and the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321–4370f, when it approved a timber sale in the Grade and Dukes Creek area ("the Grade/Dukes sale") in Payette National Forest ("Payette").

We have jurisdiction under 28 U.S.C. § 1291. Although the timber sale is now complete, we conclude that Neighbors' challenge to the sale is not moot because effective relief may still be granted. We reverse the district court's dismissal of Neighbors' NFMA claims, affirm its dismissal of Neighbors' NEPA claims, and remand.

## I. BACKGROUND

### A.

The Forest Service's decisions regarding Payette are governed by NFMA, which sets forth a statutory framework for the management of our national forests. *See Neighbors of Cuddy Mountain v. United States Forest Serv.,* 137 F.3d 1372, 1376 (9th Cir.1998) (*Neighbors I*). NFMA first requires the Forest Service to develop a Land Resources Management Plan (commonly known as a forest plan) for the entire forest. *Id.;* 36 C.F.R. § 219.10(a), (b).[1] The Forest Service is then required

to ensure that the forest is managed in compliance with the forest plan. *See* 36 C.F.R. § 219.10(e). Specific projects, such as the Grade/Dukes timber sale, must be analyzed by the Forest Service and the analysis must show that each project is consistent with the plan. *See* 16 U.S.C. § 1604(i); 36 C.F.R. § 219.10(e).

NFMA requires that the Forest Service "provide for diversity of plant and animal communities" in managing national forests. 16 U.S.C. § 1604(g)(3)(B). Section 219.19 of Volume 36 of the Code of Federal Regulations, one of the many regulations promulgated to ensure such diversity, states that wildlife habitat

> shall be managed to maintain viable populations of existing native and desired non-native vertebrate species in the planning area. For planning purposes, a viable population shall be regarded as one which has the estimated numbers and distribution of reproductive individuals to insure its continued existence is well distributed in the planning area. In order to insure that viable populations will be maintained, habitat must be mum number of reproductive individuals and that habitat must be well distributed so that those individuals can interact with others in the planning area provided to support, at least, a mini

> . . . .

The Forest Service prepared a forest plan (the "Forest Plan") for the 2.3 million acre Payette in 1988. Among other things, the Forest Plan requires that a certain percentage of old growth habitat be retained in Payette. Old growth consists of the oldest trees in the forest, and it is characterized by several parameters set forth in the Forest Plan, including density and canopy closure. A number of animal species in Payette rely on old growth habitat, including the pileated woodpecker, flammulated owl, great gray owl, and northern goshawk. These species are sometimes referred to as old growth species.

To protect viable populations of old growth species as NFMA requires, the Forest Service employs a "proxy on proxy approach" in Payette, monitoring and protecting old growth habitat in an effort to safeguard old growth species. *See Idaho Sporting Cong. v. Rittenhouse*, —— F.3d ——, 2002 WL 31056605 (9th Cir.2002) (describing this approach); *Inland Empire Pub. Lands Council v. United States Forest Serv.*, 88 F.3d 754, 761 (9th Cir.1996) (approving the use of this approach under the circumstances of that case). The Forest Plan designates the pileated woodpecker as the Management Indicator Species for old growth habitat. A management indicator species "is used as a bellweather ... for the other species that have the same special habitat needs or population characteristics." *Inland Empire*, 88 F.3d at 762 n. 11. The Forest Service then monitors the habitat of the management indicator species, which is mature and old growth forest in the case of the pileated woodpecker. By studying the result of a timber sale on the habitat of the pileated woodpecker, the Forest Service attempts to estimate its effects on all old growth species.

Because Neighbors challenges the Forest Service's treatment of old growth species and habitat under the Forest Plan, some detail concerning the Forest Plan's old growth requirements is necessary. Under the plan, the habitat of the pileated woodpecker is maintained as follows. Circles that are ten miles in diameter are drawn evenly over the forest to estimate the theoretical home range of the pileated woodpecker. There are sixty-one of these circles in Payette. Within each circle, the Forest Plan requires the Forest Service to "retain a minimum of 5 percent mature or old growth forest, of which 2.5 percent

must be old growth ... within each ... home range.... Old growth must be at least 30 acres in size." The Forest Plan also sets forth a monitoring requirement for the condition of circles across the forest. The plan states that at least ninety–five percent of the circles in the forest must contain six percent or more of old growth and mature forest. If fewer than ninety–five percent of the circles meet the six percent criteria, the Forest Plan requires that there be further evaluation or a change in management direction.

■ In contrast to NFMA, NEPA exists to ensure a process, not to mandate particular results. *See Inland Empire*, 88 F.3d at 758. It requires agencies of the federal government to prepare an Environmental Impact Statement ("EIS") "whenever they propose to undertake any 'major Federal action [ ] significantly affecting the quality of the human environment.' " *Id.* (quoting 42 U.S.C. § 4332(2)(C)) (alteration in original). The goal of NEPA is two-fold: (1) to ensure that the agency will have detailed information on significant environmental impacts when it makes decisions; and (2) to guarantee that this information will be available to a larger audience. *Robertson v. Methow Valley Citizens Council,* 490 U.S. 332, 349, 109 S.Ct. 1835, 104 L.Ed.2d 351 (1989).

### B.

The Grade/Dukes timber sale has a long procedural history, most of which is set forth in detail in *Neighbors I. See Neighbors I,* 137 F.3d at 1375–76. The Forest Service first approved a timber sale in the Grade and Dukes Creek area of Payette in 1991. After several groups brought a successful administrative appeal of the decision, the Regional Forester reversed the Forest Service's approval of the sale and ordered the Forest Service to conduct further environmental review, including a review of how the project would affect various ous species.

The Forest Service responded with a Supplemental EIS ("SEIS") and re-approved the sale in 1994. Neighbors believed that the SEIS was also insufficient and sought judicial review in federal district court, alleging, *inter alia,* that the Forest Service had failed to demonstrate that the timber sale complied with the old growth and mature-tree standards of the Forest Plan, and to address sufficiently the cumulative impacts of the sale as required by NEPA. The district court granted summary judgment for the Forest Service.

On appeal, we reversed the district court. *See Neighbors I,* 137 F.3d at 1378. We held that the SEIS for the Grade/ Dukes timber sale was insufficient for three reasons. First, the Forest Service did not demonstrate that sufficient old growth would remain in each pileated woodpecker circle after the sale, as required by the Forest Plan. *Id.* at 1377–78. Second, the Forest Service failed to evaluate adequately the cumulative impact of three other planned sales. *Id.* at 1378–79. Third, the Forest Service failed to take the requisite "hard look" at whether and how it might mitigate the impact of the logging. *Id.* at 1380–81. We remanded to the Forest Service for further environmental study and enjoined any further logging at Grade/Dukes pending the required review.

On remand, the Forest Service completed a Second Supplemental EIS ("SSEIS") to address our concerns in *Neighbors I.* The Forest Service determined that the proposed sale would affect directly only one pileated woodpecker circle, Circle 3. Citing on-the-ground surveys of the forest, the SSEIS concludes that even after the sale, Circle 3 and the several circles adjacent to it would continue to meet the 2.5 percent old growth standard set forth in the Forest Plan, with Circle 3 containing

2.8 percent old growth. The SSEIS also contains a cumulative impacts analysis that accounts for the west side of the forest, covering circles one through twenty. It concludes that nineteen of the twenty circles on the west side would continue to meet the 2.5 percent old growth standard after the sale. It acknowledges, however, that about 186 acres of mature growth would be cut as part of the timber sale.

Armed with this new information, in 1999 the Forest Service approved logging the remainder of the Grade/Dukes contract, consisting of about 231 acres and seven million board feet of timber.

## C.

On May 10, 2000, Neighbors filed this action alleging that the Forest Service has once again acted arbitrarily and capriciously in approving the Grade/Dukes sale.

Counts one and two allege that the Forest Service has failed to ensure the viability of old growth species throughout the forest as required by NFMA. Specifically, count one alleges that the Forest Service is violating NFMA by approving old-growth timber sales without collecting sufficient data on species populations to be able to ensure, as NFMA requires, species diversity in Payette. The complaint points to regulations requiring the Forest Service to monitor population trends of species. See 36 C.F.R. §§ 219.12(d), 219.19(a)(6), 219.26. Count two alleges that the Forest Service is no longer protecting old growth species in accordance with its duties under NFMA to "insure [that these species'] con-

tinued existence is well distributed in the planning area." See 36 C.F.R. § 219.19. It also alleges that the Forest Service is not complying with the minimum requirements of the Forest Plan for protecting old growth species, which include the plan's old growth habitat standard described *supra*. Count four challenges the sufficiency of the latest Grade/Dukes EIS under NEPA[2] and alleges that the decision to log old growth timber at Grade/Dukes was arbitrary and capricious.[3]

On cross motions for summary judgment and the government's motion for partial dismissal, the district court entered an order and judgment in favor of the Forest Service. The court dismissed counts one and two with prejudice. Relying on a Supreme Court case, it concluded that these claims were not sufficiently tied to site-specific action to be ripe for review. *See Ohio Forestry Ass'n v. Sierra Club*, 523 U.S. 726, 732–33, 118 S.Ct. 1665, 140 L.Ed.2d 921 (1998) (holding that some claims regarding a Forest Plan under NFMA are not ripe unless they challenge site-specific actions). In the alternative, the court also held that counts one and two duplicated count four and should be struck as redundant under Federal Rule of Civil Procedure 12(f). On count four the district court entered summary judgment for defendants, finding that the latest EIS was sufficient.

During most of this litigation, defendants logged. Although Neighbors had moved for a preliminary injunction to halt the logging pending its challenge, the dis-

---

**2.** We recognize that the heading of the fourth claim for relief is labeled as a claim under both NFMA and NEPA, but the substance of the claim addresses only the sufficiency of the EIS under NEPA. Throughout the remainder of this opinion, we therefore occasionally refer to claims one and two as the NFMA claims and claim four as the NEPA claim.

**3.** Count three is not implicated in this appeal, but it also challenges the Forest Service's decision to continue logging old growth timber in Payette. The district court dismissed count three as barred by res judicata, interpreting it to challenge the Forest Service's decision not to amend the Forest Plan after devastating 1994 fires struck the eastern portion of the forest (a claim previously litigated). Neighbors does not appeal this dismissal.

trict court denied the motion and we upheld the denial on appeal in an unpublished memorandum disposition. Since the district court's ruling, defendant-intervenor Boise Cascade Corporation has completed logging under the Grade/Dukes sale.[4]

## II. STANDARD OF REVIEW

Judicial review of agency decisions under NFMA and NEPA is governed by the Administrative Procedure Act ("APA"), which specifies that an agency action may be overturned only where it is found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

## III. DISCUSSION

### A. Mootness

Defendants assert that Neighbors' challenge to the Grade/Dukes sale is moot because logging is complete. A case becomes moot when it " 'los[es] its character as a present, live controversy of the kind that must exist if we are to avoid advisory opinions on abstract propositions of law.' " *Cantrell v. City of Long Beach*, 241 F.3d 674, 678(9th Cir.2001) (quoting *Hall v. Beals*, 396 U.S. 45, 48, 90 S.Ct. 200, 24 L.Ed.2d 214 (1969)) (alteration in original).

■ One might assume that defendants must be correct, for the logging at issue has been completed. Our cases, however, make clear that completion of activity is not the hallmark of mootness. Rather, a case is moot only where no effective relief for the alleged violation can be given. *See id.* at 678 (holding that completion of the action challenged does not moot a case where there can still be "any effective relief" for alleged harm); *Northwest Envtl. Def. Ctr. v. Gordon*, 849 F.2d 1241, 1244–45 (9th Cir.1988).

In *Gordon*, we reversed a district court's holding that a challenge to regulations governing the 1986 salmon fishing season was mooted by the close of the season. *Gordon*, 849 F.2d at 1245. We held that "[t]he fact that the alleged violation has itself ceased is not sufficient to render a case moot. As long as effective relief may still be available to counteract the effects of the violation, the controversy remains live and present." *Id.* We found that the damage caused by the 1986 measures could be repaired or mitigated "obviously not by restoring the fish harvested in 1986, but by allowing more fish to spawn in 1989." *Id.*

Similarly, in *Cantrell* plaintiffs challenged the sufficiency of an EIS done in connection with a plan to develop a former naval station. By the time the appeal reached this circuit, several historic buildings and bird habitats had been razed under the plan. Although plaintiffs conceded on appeal that the destruction of the buildings could not be reversed, we held that

> [n]evertheless, if required to undertake additional environmental review, the defendants could consider alternatives to the current reuse plan, and develop ways to mitigate the damage to the birds' habitat by, for example, creating new nesting and foraging areas on the land that was formerly the station or utilizing other nearby land for mitigation purposes. Since effective relief may still be available, the demolition of the [buildings] was insufficient to render the case moot.

*Cantrell*, 241 F.3d at 678–79.

■ As in *Gordon* and *Cantrell*, we decline to hold the dispute moot simply be-

---

4. Although not all acres originally included within the sale have been logged, Boise Cascade and the Forest Service have entered into a binding contract to forgo logging the remainder.

cause the violation (if any) has already occurred. Neighbors alleges that the Grade/Dukes sale unlawfully harmed old growth species, such as the pileated woodpecker and the great gray owl, in contravention of NFMA and NEPA. Remedies for this alleged harm remain available. Although of course the logged trees cannot be brought back, the court below might order other measures to help mitigate the damage caused by the sale. For instance, it could order the Forest Service to study the sale's impacts on species viability, and, if necessary, to mitigate those impacts in both the area of the sale and elsewhere in the forest. If warranted, it might order the Forest Service to adjust future timber plans to compensate for this allegedly unlawful one. *See Gordon,* 849 F.2d at 1245. Or, the remedy could take the form of a more direct species population intervention, such as monitoring the birds' population trends and developing, if necessary, artificial habitats for their recovery.[5] Because "effective relief may still be available to counteract the effects of the violation, the controversy remains live and present." *Id.*

Our decision in *Headwaters, Inc. v. Bureau of Land Mgmt.,* 893 F.2d 1012 (9th Cir.1989) is not to the contrary. There, plaintiffs filed a "narrowly-drawn" complaint seeking only to prevent defendants from logging three units of a sixteen unit timber sale. *Id.* at 1014 n. 5. After the three units at issue had been logged pending appeal, we held the plaintiffs' claim for injunctive relief moot, reasoning that "[n]o injunction can restore the trees which were logged." *Id.* at 1015. We specifically distinguished, however, cases in which a plaintiff had "made a broad request for such other relief as the court deemed ap-

propriate," noting that this circuit may construe such requests for relief "broadly to avoid mootness." *Id.* at 1015 n. 6.

Here, Neighbors requests the type of broad relief distinguished in *Headwaters.* In addition to an injunction, Neighbors' complaint requests "such further relief as may be necessary and appropriate to avoid further irreparable harm." Because harm to old growth species may yet be remedied by any number of mitigation strategies, as discussed above, the case is live.

### B. NFMA

#### i.

In counts one and two of its complaint, Neighbors alleges that the Forest Service is violating NFMA by failing to ensure that old growth species are adequately protected within Payette. Specifically, Neighbors points to regulations requiring the Forest Service to manage wildlife habitat "to maintain viable populations." 36 C.F.R. § 219.19. The same regulation states that a population will be viable where it has "the estimated numbers and distribution of reproductive individuals to *insure* [that] its continued existence is *well distributed* in the planning area." *Id.* (emphasis added); *see also* 36 C.F.R § 219.3 (defining "planning area" as the area covered by a forest plan, in this case, the entire Payette). Plaintiffs argue that the Forest Service has failed to monitor population trends or to protect the minimum amounts of old growth habitat required by the Forest Plan in order to insure species viability, and that this failure taints the Forest Service's approval of the Grade/Dukes sale.

---

5. We emphasize that "[t]here is no need for us to rule now on the propriety of particular kinds of equitable relief that might or might not be granted in the future; it is sufficient to conclude that some form of effective relief is still available." *Gordon,* 849 F.2d at 1245 n. 6.

Defendants argue that even if true, this Court lacks power to remedy any alleged defects in their forest-wide management. They rely on cases that preclude judicial review of forest-wide monitoring and management claims that are not tied to site-specific challenges. *See Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 891, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990) (*Nat'l Wildlife Fed'n*); *Ecology Ctr., Inc. v. United States Forest Serv.,* 192 F.3d 922, 925–26 (9th Cir.1999) (holding non-justiciable a challenge to the Forest Service's failure to comply with forest monitoring duties imposed by NFMA because such duties are not "final agency actions" under the APA). The district court agreed, dismissing counts one and two because they did not, in its view, challenge sufficiently final agency actions.

■■■ Courts are generally precluded, under the ripeness doctrine, from prematurely adjudicating administrative matters until the proper agency has formalized its decision. *See Ecology Ctr.,* 192 F.3d at 924; *Ohio Forestry Ass'n,* 523 U.S. at 733, 118 S.Ct. 1665. Because NFMA does not authorize judicial review or create a private cause of action to enforce its provisions, Neighbors is limited to bringing a claim under the APA. *See* 5 U.S.C. §§ 702, 704; *see also Ecology Ctr.,* 192 F.3d at 924–25. The APA provides for review of "final agency action[s]" only. 5 U.S.C. § 704. Forest-wide monitoring and reporting duties, even when required by a Forest Plan, are not "final agency actions" under the APA and therefore cannot be challenged on their own. *Ecology Ctr.,* 192 F.3d at 925–26. They do not mark the culmination of the agency's decision–making process, nor do rights or obligations flow from them. *See id.* at 925.

Thus, in order to win scrutiny of the Forest Service's forest-wide management practices, Neighbors must challenge a specific, final agency action, the lawfulness of which hinges on these practices. "[C]ourts clearly permit a plaintiff to raise claims pertaining to inadequate monitoring by bringing an APA challenge to a final decision." *Ecology Ctr.,* 192 F.3d at 925 n. 6.

■■ Of course, not all forest-wide practices may be challenged on the coattails of a site-specific action; there must be a relationship between the lawfulness of the site-specific action and the practice challenged. As the Supreme Court has written:

Except where Congress explicitly provides for our correction of the administrative process at a higher level of generality, we intervene in the administration of the laws only when, and to the extent that, a specific "final agency action" has an actual or immediately threatened effect. Such an intervention may ultimately have the effect of requiring a regulation, a series of regulations, or even a whole "program" to be revised by the agency in order to avoid the unlawful result that the court discerns.

*Nat'l Wildlife Fed'n,* 497 U.S. at 894, 110 S.Ct. 3177(internal citation omitted). Thus, monitoring and management practices are reviewable when, and to the extent that, they affect the lawfulness of a particular final agency action. *Id.* Where the Forest Service generally fails to comply with NFMA and the governing Forest Plan, and where that failure renders an approval of a timber sale unlawful, this Court has power, under the APA, to review the sale and to conclude that its approval was unlawful—even if doing so would, as a practical matter, require us to consider forest-wide management decisions.

■■ We conclude that counts one and two are properly before the court because Neighbors alleges a sufficient connection between these forest-wide NFMA claims and its challenge to the Grade/Dukes sale.

Although the structure of the complaint leaves much to be desired, on a motion to dismiss we construe all allegations of material fact in the light most favorable to the nonmoving party and entertain the complaint unless it appears beyond doubt that the plaintiff can prove no set of facts in support of its claim that would entitle it to relief. *See Gilligan v. Jamco Dev. Corp.,* 108 F.3d 246, 248 (9th Cir.1997).

The complaint does allege that the Forest Service is failing to protect old growth habitat and species, and it specifically states that the Forest Service erred in approving the Grade/Dukes sale because the sale is likely to threaten the viability of old growth species. Count one specifies that "the Supervisor's failure to carry out his mandatory duties under NFMA ... has ... rendered any decisions under the [Forest Plan] to harvest old growth arbitrary." This paragraph makes clear the causal connection between alleged mismanagement and the Forest Service's allegedly unlawful approval of old growth sales, including Grade/Dukes. While count two does not specifically connect its forest-wide claims of mismanagement to unlawful decisions to sell old growth, it does incorporate the specific references to Grade/Dukes included throughout the complaint. It also states that "the [Forest Service] is no longer insuring the viability of old growth species in accordance with its duties under NFMA."

Thus, a fair reading of the complaint reveals allegations that the· Forest Service's forest-wide failures to protect old growth habitat and species in accordance with NFMA and the Forest Plan render the approval of a specific mature growth timber sale, Grade/Dukes, unlawful. *Cf. Wilderness Soc'y v. Thomas,* 188 F.3d 1130, 1134 (9th Cir.1999) (holding that the court may entertain allegations "that the Forest Service's general methodology in determining grazing suitability in the For-

est Plan was flawed, causing site-specific harm by allowing grazing in an area unsuitable for it").

This is not a case, like *Ecology Center,* in which a plaintiff seeks to challenge forest monitoring practices alone. *Cf. Ecology Ctr.,* 192 F.3d at 924(rejecting a complaint that was filed solely "to compel the Forest Service to comply fully with its monitoring duty," without identifying a more particular final agency action). Here, by contrast, plaintiffs seek to show that a failure to monitor species viability as required by NFMA renders a specific final agency action, namely the Grade/Dukes sale, unlawful. In fact, in *Ecology Center* we specifically distinguished cases seeking to challenge monitoring duties under NFMA alone, which are not justiciable, from ones in which a plaintiff "raise[s] claims pertaining to inadequate monitoring by bringing an APA challenge to a final decision." *Id.* at 925 n. 6; *see also Idaho Sporting Cong. v. Thomas,* 137 F.3d 1146, 1153–54 (9th Cir.1998) (entertaining a challenge to forest monitoring under NFMA when brought in the context of a challenge to a particular timber sale); *Inland Empire,* 88 F.3d at 759–761(entertaining a challenge to the sufficiency of the Forest Service's population viability analysis under NFMA in the context of a timber sale dispute).

Defendants cite to a recent case from the Fifth Circuit which, they argue, rejects an attempt by similarly situated plaintiffs to challenge forest-wide monitoring practices. *See Sierra Club v. Peterson,* 228 F.3d 559, 567 (5th Cir.2000) (en banc), *cert. denied,* 532 U.S. 1051, 121 S.Ct. 2192, 149 L.Ed.2d 1024 (2001). The defect to which our sister circuit objected in *Peterson* was the plaintiffs' failure to "limit their challenge to individual sales," instead using a laundry list of specific sales as mere "evidence to support their sweeping argument

that the Forest Service's ... management of the Texas forests over the last twenty years violates the NFMA." *Id.* In contrast, here Neighbors challenges only the Grade/Dukes sale and points to Forest Service practices as evidence that this particular sale is unlawful. Indeed, the Fifth Circuit specifically recognized that (in cases such as this one) "environmental groups can challenge a specific final agency action [which] has an actual or immediately threatened effect, even when such a challenge has the effect of requiring a regulation, a series of regulations, or even a whole program to be revised by the agency." *Id.* (internal quotations omitted and alteration in original) (quoting *Nat'l Wildlife Fed'n,* 497 U.S. at 894, 110 S.Ct. 3177).

■ Defendants also argue that Neighbors' forest-wide management practices claims may not be considered in assessing the lawfulness of the Grade/Dukes sale, because the Forest Plan's old growth standard is met in the one pileated woodpecker circle, Circle 3, directly affected by the sale and in the immediately adjacent circles. We disagree. Viewing the complaint in the light most favorable to Neighbors, as we must, *see Gilligan,* 108 F.3d at 248, we take seriously Neighbors' charge that the Forest Service is failing to protect old growth species throughout the forest as required by NFMA and the Forest Plan. Neighbors points to surveys conducted by the Forest Service itself that suggest that large portions of the eastern side of Payette, including fifteen pileated woodpecker circles, contain fewer stands of old growth trees than required by the Forest Plan. The record contains evidence that a fire on the eastern side of the Payette wiped out significant portions of old growth in 1994. If true, the decision to approve the Grade/Dukes sale may not be in accordance with law *even if* the sale does not violate Forest Plan old growth requirements within its immediate area when viewed in isolation from the rest of the forest.

NFMA requires that "wildlife habitat shall be managed to maintain viable populations of existing native and desired non-native species in the planning area." 36 C.F.R. § 219.19; *see also* 16 U.S.C. § 1604(g)(3)(B). In order to meet this requirement, habitat must be "well distributed" throughout the forest. 36 C.F.R. § 219.19. The Forest Plan further delineates the minimum amounts and distribution of old growth habitat that must be present throughout Payette, as detailed above. Given these substantive constraints, along with allegations that these requirements are not being met, the approval of a sale may conflict with the Forest Service's mandate to insure species viability even though the logging would not violate Forest Plan standards for the areas directly affected by the sale.

Take, for example, a national forest in which it is discovered that no sections contain the amounts of old growth required by the governing Forest Plan except a single large section of trees, all but 2.5 percent of which are scheduled to be cut. Such a sale might meet the Forest Plan old growth requirements when considered in isolation (because old growth trees will continue to make up 2.5 percent of the circles in that single section), but will undoubtedly fail to meet the Forest Plan and NFMA requirements concerning species viability throughout the forest (because old growth has been so devastated elsewhere in the forest as to doom old growth species with any further cuts).

Thus, compliance with NFMA's forest-wide species viability requirements is relevant to the lawfulness of any individual timber sale. To hold otherwise would permit the Forest Service to don blinders to the overall condition of a national forest each time it approved a sale, quite literally losing sight of the forest for the trees. This would contravene "one of the funda-

mental purposes of Congress in enacting [NFMA]: that the National Forest System be managed with 'a systematic interdisciplinary approach,' by means of 'one integrated plan for each unit of the National Forest System.'" *Idaho Sporting Cong. v. Rittenhouse*, 305 F.3d 957 (9th Cir.2002) (quoting 16 U.S.C. § 1604).

Again, we express no opinion at this time about whether Neighbors' allegations concerning the paucity of old growth habitat in Payette are true, or whether they (or other allegations concerning the Forest Service's failures to protect old growth species) suffice to make the Forest Service's approval of Grade/Dukes unlawful. They are, however, relevant to a court's review of the Grade/Dukes sale and should be considered.

In short, because Neighbors challenges forest-wide management practices only to the extent that these practices affect the lawfulness of a final agency action, we hold counts one and two reviewable under the APA.

ii.

As an alternative basis for dismissing counts one and two with prejudice, the district court ruled that the counts were redundant in light of count four and were therefore subject to dismissal under Federal Rule of Civil Procedure 12(f). We review the district court's decision under Rule 12(f) to strike for abuse of discretion. *See Nurse v. United States*, 226 F.3d 996, 1000 (9th Cir.2000).

■ Count four alleges that the EIS prepared for the Grade/Dukes sale is insufficient under NEPA because it does not consider adequately the cumulative impacts of the sale or all reasonable alternatives to the sale. In comparison, counts one and two allege that the Forest Service has failed to comply with NFMA by failing to keep certain data and to ensure forest-

wide population viability, thereby endangering old growth species. Because the counts are based on different statutes and seek to enforce different duties of the Forest Service, the district court abused its discretion in striking the counts as redundant. *See Inland Empire*, 88 F.3d at 757–58 (comparing NFMA's substantive requirements with NEPA's purely procedural ones). Although the district court did entertain the merits of some of Neighbors' NFMA claims briefly in its analysis of count four, it did not address the merits of counts one and two, and we therefore remand counts one and two to the district court for an analysis of their merits in the first instance. The district court should determine, consistent with this opinion, whether the Forest Service's practices as outlined in these counts render its approval of the Grade/Dukes sale arbitrary, capricious, or otherwise not in accordance with law. If the district court holds that the Forest Service violated NFMA by approving Grade/Dukes, it should consider what if any harm the sale caused, including harm to old growth species, and order appropriate mitigation measures.

## C. NEPA

Count four of Neighbors' complaint challenges the sufficiency of the latest EIS for the Grade/Dukes sale, alleging that it fails to analyze adequately the impacts, including cumulative impacts, of the sale on old growth species throughout the Forest.

As discussed above, NEPA is a purely procedural statute. "NEPA does not mandate particular results, but simply provides the necessary process to ensure that federal agencies take a hard look at the environmental consequences of their actions." *Muckleshoot Indian Tribe v. United States Forest Serv.*, 177 F.3d 800, 814 (9th Cir. 1999) (per curiam) (quoting *Robertson v. Methow Valley Citizens Council*, 490 U.S.

332, 350, 109 S.Ct. 1835, 104 L.Ed.2d 351 (1989)) (internal quotation marks omitted). Under NEPA, an EIS must be prepared for "major Federal actions significantly affecting the quality of the human environment." 42 U.S.C. § 4332(2)(C). Among other things, an EIS must include an examination of the cumulative impacts of proposed actions. Cumulative impact "is the impact on the environment which results from the incremental impact of the action when added to other past, present, and reasonably foreseeable future actions." 40 C.F.R. § 1508.7. "Cumulative impacts can result from individually minor but collectively significant actions taking place over a period of time." *Id.*

■ A court gauges the adequacy of an EIS under a "rule of reason" that does not materially differ from an "arbitrary and capricious" review. *See Idaho Sporting Cong.*, 137 F.3d at 1149. In assessing the adequacy of an EIS, a court determines whether it contains a "reasonably thorough discussion of the significant aspects of probable environmental consequences." *Neighbors I*, 137 F.3d at 1376 (citation and internal quotation marks omitted). Once the court is "satisfied that an agency's exercise of discretion is truly informed, [the court] must defer to th[at] informed discretion." *Greenpeace Action v. Franklin*, 14 F.3d 1324, 1332 (9th Cir.1992) (citations and internal quotation marks omitted) (second alteration in original).

■ Here, the Forest Service did a substantial amount of analysis on the effects of the Grade/Dukes sale. It confirmed that sufficient old growth would remain in all circles directly affected by the sale. It analyzed the cumulative effects of the sale on the west side of the forest, taking into account all past and proposed sales, and concluded that sufficient old growth would remain in that portion of the forest for the foreseeable future. Although Neighbors argues that it was insufficient to analyze only the cumulative effects on the west side of the forest, under NEPA we defer to an agency's determination of the scope of its cumulative effects review. *See Kleppe v. Sierra Club*, 427 U.S. 390, 413–414, 96 S.Ct. 2718, 49 L.Ed.2d 576 (1976). Given our standard of review, we conclude that the Forest Service took the requisite "hard look" at the environmental effects of the sale before approving it. *See Robertson*, 490 U.S. at 350, 109 S.Ct. 1835. That is all NEPA demands.[6]

We affirm the district court's summary judgment in favor of defendants on count four.

## IV. CONCLUSION

For the foregoing reasons, we REVERSE the district court's dismissal of counts one and two of plaintiffs' complaint and REMAND to the district court for an adjudication of their merits. We AFFIRM the district court's summary judgment in favor of defendants on count four. Each side shall bear its own costs on appeal.

AFFIRMED in part, REVERSED in part, and REMANDED.

---

**6.** As discussed *supra*, we emphasize that the Forest Service's compliance with NEPA's procedural requirements for analyzing the effects of the timber sale does not necessarily satisfy its different, more substantive duties under NFMA to ensure species viability throughout the forest. Whereas we defer to the agency's determination of the geographic scope of its analysis under NEPA, *see Kleppe*, 427 U.S. at 413–414, 96 S.Ct. 2718, under NFMA Congress has delineated the scope of the area to be analyzed and protected in a coordinated manner. NFMA requires the Forest Service to provide for species viability throughout the "planning area," i.e., the entire forest. *See* 36 C.F.R. §§ 219.19, 219.3.

THOMPSON, Circuit Judge, Dissenting in part:

Because effective relief from the allegedly unlawful harvesting of old growth timber at Grade/Dukes is not within the powers of this court, the plaintiffs' claims under the National Forest Management Act ("NFMA"), 16 U.S.C. §§ 1600–1687, are moot. I respectfully dissent from the majority's decision and judgment regarding those claims, but concur in the majority's decision and judgment as to the plaintiffs' claim under the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321–4370f.

"The duty of this court, as of every other judicial tribunal, is to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions.... " *Mills v. Green,* 159 U.S. 651, 653, 16 S.Ct. 132, 40 L.Ed. 293 (1895). If we cannot grant effective relief, we lack jurisdiction. *Church of Scientology v. United States,* 506 U.S. 9, 12, 113 S.Ct. 447, 121 L.Ed.2d 313 (1992); *IRS v. Pattullo (In re Pattullo),* 271 F.3d 898, 901 (9th Cir.2001) (per curiam).

As the majority acknowledges, the original relief sought by the plaintiffs as to the NFMA claims—an injunction prohibiting further logging at Grade/Dukes—is no longer available. *Cf. Headwaters, Inc. v. Bureau of Land Mgmt.,* 893 F.2d 1012, 1015 (9th Cir.1989). To avoid mootness, the majority relies upon the proposition that an environmental case is not mooted by the completion of allegedly unlawful agency action so long as alternative mitigation measures might still be ordered. *See Cantrell v. City of Long Beach,* 241 F.3d 674, 678–79 (9th Cir.2001). According to the majority, three types of mitigation might still be ordered in this case: (1) a prohibition on future logging; (2) construction of artificial habitat; or (3) studies on the effects of any unlawful logging and possible mitigation. None of these constitutes effective mitigation within the power of this court. The NFMA claims are moot.

I

The majority's first suggestion is that the district court could issue an order prohibiting future logging sales. Such a prohibition on future logging sales exceeds the powers of this court and is unnecessary.

In *Ohio Forestry Association v. Sierra Club,* 523 U.S. 726, 732–38, 118 S.Ct. 1665, 140 L.Ed.2d 921 (1998), the Court held that we may not adjudicate the merits of a forest plan under the NFMA outside the context of a particular final agency action, *e.g.* a logging sale. A forest plan, the Court explained, is not a final agency action because it "does not give anyone a legal right to cut trees, nor does it abolish anyone's legal authority to object to trees being cut." *Id.* at 733, 118 S.Ct. 1665; *see also Ecology Ctr., Inc. v. United States Forest Serv.,* 192 F.3d 922, 924 (1999) ("Courts are generally precluded, under the ripeness doctrine, from prematurely adjudicating administrative matters until the proper agency has formalized its decision making process."). Here, the majority proposes enjoining future timber sales if the Grade/Dukes sale was unlawful. This violates *Ohio Forestry.*

The majority relies upon *Northwest Environmental Defense Center v. Gordon,* 849 F.2d 1241, 1244–45 (9th Cir.1988). There, we held that a challenge to regulations governing the 1986 salmon season was not mooted by the close of the season because effective relief could still be ordered by ordering that more fish be allowed to spawn in 1989. The comparison of *Gordon* to this case ignores the nature of old growth timber. As we have explained in cases seeking logging injunctions, "old growth forests ... w[ill], if cut,

take hundreds of years to reproduce." *Neighbors of Cuddy Mountain v. United States Forest Serv.*, 137 F.3d 1372, 1382 (9th Cir.1998) (quoting *Portland Audubon Soc'y v. Lujan*, 884 F.2d 1233, 1241 (9th Cir.1989)). Enjoining future sales (unless the injunction is meant to last hundreds of years) will not replenish old growth, whereas the remedy ordered in *Gordon* would improve the future supply of salmon.

The remedial action the majority suggests—prohibiting future logging sales forest-wide—would indeed prevent the further depletion of old growth trees. But such a sweeping remedy as to future logging is not only impermissible, it is inappropriate.

The propriety of future logging sales can best be analyzed and evaluated as part of the administrative process pertinent to those sales. Under the NFMA and the NEPA, if the Grade/Dukes sale produced any effects on the viability of old growth species (which it may well have), any future old growth logging sale within the area affected by Grade/Dukes will have to consider Grade/Dukes in its cumulative effects analysis. *See* 40 C.F.R. § 1508.7(analysis of cumulative effects must include all *past*, present and future actions within cumulative effects area). If harm caused by the Grade/Dukes sale threatens old growth species viability in that cumulative effects area, the new sale would not be legal. *See* 16 U.S.C. § 1604(i); 36 CFR 219.20(b)(2) (2001).[1] Hence, any prohibition on future logging in areas where species viability is threatened by logging at Grade/Dukes is redundant and ineffective—such logging is already prohibited under federal law.

## II

The majority next suggests that the Forest Service might be ordered to construct artificial habitat to replace the habitat destroyed. The majority seems to rely upon *Cantrell*, where we held that, although the bird habitat at issue had already been destroyed, mitigation could still be ordered in the form of requiring the construction of new habitat. *See* 241 F.3d at 678–79. This construction was possible because the habitat at issue consisted of 26 acres of wetlands habitat and separate habitat in ficus trees. *See id.* at 676. Presumably, our reasoning was that the 26 acres (or equivalent acreage nearby) could be re-flooded and new ficus trees could be planted.

Again, the majority ignores the nature of old growth habitat. As the plaintiffs admit, this is *"habitat that, by its very definition, takes centuries to develop."* (emphasis added). Habitat replication here, shy of centuries of growth, is not possible.

## III

Finally, the majority suggests the district court could order the Forest Service to engage in studies as to the effect of the Grade/Dukes sale on species viability and possible mitigation of any adverse effect. But to order a study absent the possibility of mitigation is to order the performance of an idle act. A study can do nothing to ameliorate the loss of old growth habitat unless the study could lead to effective relief. Although *Cantrell* mentioned the possibility of a study, it did so in the context of suggesting possible ways that mitigation could be achieved, such as the construction of new habitat. *See* 241 F.3d

---

1. Although the majority opinion correctly cites to the Code of Federal Regulations as it stood in 1999, *see* Slip Op. at —— n. 1, I cite here to the 2001 version because that would apply to future sales. The differences between the 1999 and 2001 versions are, in any case, not material here.

at 678–79. Old growth cannot be constructed; it takes centuries to develop. For the reasons I have previously stated, mitigation is not possible. Absent such a possibility, requiring the Forest Service to engage in long, intensive, and expensive studies is not remedial. It is punitive.

### IV

I respectfully dissent from the majority's decision and judgment regarding the NFMA claims.