*824 TASHIMA, Circuit Judge,
dissenting:
The district court dismissed this case “because logging operations had been completed [and] the cause was moot.” Maj. op. at 819. Without disagreeing with the underlying facts — that all logging and hauling operations have been completed and all that remains to be done to complete the project is some minor cleanup work in the form of hand piling and slash burning' — the majority holds that this case is not moot. Because, in this case which presents only a challenge under the National Environmental Policy Act (“NEPA”), 42 U.S.C. § 4321-4370f, I disagree with that conclusion, I respectfully dissent.
“A moot action is one where ‘the issues presented are no longer “live” or the parties lack a legally cognizable interest in the outcome.’ ” Nw. Envtl. Def. Ctr. v. Gordon, 849 F.2d 1241, 1244 (9th Cir.1988) (quoting Murphy v. Hunt, 455 U.S. 478, 481, 102 S.Ct. 1181, 71 L.Ed.2d 353 (1982) (per curiam)). It is the constitutional “duty of this court, as of every other judicial tribunal ... to decide actual controversies by a judgment which can be carried into effect, and not to give opinions on moot questions.” Neighbors of Cuddy Mountain v. Alexander, 303 F.3d 1059, 1072 (9th Cir.2002) (Thompson, J., dissenting in part) (quoting Mills v. Green, 159 U.S. 651, 653, 16 S.Ct. 132, 40 L.Ed. 293 (1895)) (“Cuddy Mountain II”). Accordingly, if effective relief cannot be granted, we lack jurisdiction. Id. (citing Church of Scientology v. United States, 506 U.S. 9, 12, 113 S.Ct. 447, 121 L.Ed.2d 313 (1992)).
All of the logging and hauling of trees at the BLM’s Mr. Wilson logging project was completed in September 2005, more than one year ago.[1] Our cases are clear that, in these circumstances, no effective relief is available under NEPA. In Headwaters, Inc. v. Bureau of Land Management, 893 F.2d 1012, 1013 (9th Cir.1989), plaintiffs alleged that the BLM managed the logging of three units of a timber sale in violation of the Federal Land Policy and Management Act of 1976. At the time of the appeal, the three units included in the sale had already been logged. Id. at 1014. Even though defendants still had to haul 50 percent of the logs from the site, and plaintiffs “made a broad request for such other relief as the court deemed appropriate,” we deemed the case moot because “[n]o relief [would] bring back the trees.” Id. at 1013, 1015 & n. 6, 1016; see also Friends of the Earth, Inc. v. Bergland, 576 F.2d 1377, 1379 (9th Cir.1978) (“Where the activities sought to be enjoined have already occurred, and the appellate courts cannot undo what has already been done, the action is moot.”). In the instant case, the slash burning that remains to be completed is an extremely trivial component of the overall project, i.e., one that, if independently assessed, undoubtedly would have no significant environmental impact. Thus, in this case, even less remains to be done to complete the project than in Headwaters, which we deemed moot.
Sierra Club v. Penfold, 857 F.2d 1307 (9th Cir.1988), a case involving NEPA challenges to a mining operation in Alaska, is also instructive. There, we deemed a challenge to an Environmental Assessment (“EA”) moot when the mining season had already expired. See id. at 1317-18. We stated that “even if we assume BLM’s decision making process is unlawful, no adequate remedy exists. Unlike a power *825 transmission line, a completed mining operation cannot be moved. The impact of the Plan mines are not remediable since we cannot order that the Plans be ‘un-mined.’ ” Id. at 1318. Similarly, in the instant case, we cannot order that the trees be “unharvested.”[2]
It is important to remember that NEPA is only a procedural statute, ie., it “imposes procedural requirements, but not substantive outcomes, on agency action.” Lands Council v. U.S. Forest Serv., 395 F.3d 1019, 1026 (9th Cir.2004). The majority asserts that this case is not moot because “harm to old growth species may yet be remedied by any number of mitigation strategies.” Maj. op. at 821 (quoting Cuddy Mountain II, 303 F.3d at 1066). But the majority forgets that, unlike Cud-dy Mountain II, this case involves only a NEPA challenge. Cuddy Mountain II also involved alleged violations of the National Forest Management Act (“NFMA”), a statute that imposes substantive requirements, as well as alleged violations of NEPA. It was in that context that we held that the completion of logging did not moot the case because various mitigation measures under the NFMA could provide effective relief.[3] No such relief is possible under NEPA. See Nat’l Audubon Soc’y v. Dep’t of the Navy, 422 F.3d 174, 202 (4th Cir.2005) (noting that courts “should take care not to craft a remedy that extends beyond what NEPA itself and its implementing regulations require”).
While it is true that ONRC sought an injunction barring future timber sales in the Mr. Wilson project area, that is a remedy that was available only before the completion of logging, ie., to require compliance with NEPA before cutting was complete; it is not available as a mitigation measure. “[R]elief under NEPA must be tailored to remedy the particular violations in the case; courts will not issue injunctions under NEPA only as prophylactic or punitive measures.” Bergland, 576 F.2d at 1379. Considering that “NEPA itself authorizes no private right of action,” Penfold, 857 F.2d at 1315, it is inappropriate to allow substantive remedies for violations of a procedural statute. Cf. Cuddy Mountain II, 303 F.3d at 1073-74 (Thompson, J., dissenting in part) (“A study can do nothing to ameliorate the loss of old growth habitat unless the study could lead to effective relief .... [as o]ld growth cannot be constructed [and] takes centuries to developt,] ... mitigation is not possible”).
In concluding that this case is not moot, the majority also relies on Earth Island Institute v. U.S. Forest Service, 442 F.3d 1147, 1157-58 (9th Cir.2006). Maj. op. at 821. In Earth Island, however, the project was not yet completed, because the logging company still had a contractual right to cut down more trees. 442 F.3d at 1157. Here, unlike in Earth Island, defendant-intervenor Herbert Lumber Compa *826 ny cannot cut more trees. The three-year term of the project, which began on April 4, 2003, has expired.
In addition, Earth Island, like Cuddy Mountain II, involved alleged violations of NFMA, a statute which imposes substantive environmental requirements on the United States Forest Service (“USFS”). See id. at 1154 (citing 36 C.F.R. § 219.12); Lands Council, 395 F.3d at 1032-33 (noting that once the USFS develops and adopts a Forest Plan, “NFMA prohibits any site-specific activities that are inconsistent with the Forest Plan”). To the extent that NFMA has the substantive aim of preserving species, it makes sense to adopt remedies to further that goal. In fact, the mitigation remedies proposed in Cuddy Mountain II specifically pertained to the plaintiffs’ NFMA claims. See 303 F.3d at 1072-74 (Thompson, J., dissenting in part). To that end, in neither Earth Island nor Cuddy Mountain II did we to confront the issue we are faced with today: whether a court can provide any effective relief in a case raising only procedural issues under NEPA, when all logging and hauling have already been completed. Thus, those cases simply do not support the majority’s reliance on them for holding when a case alleging only NEPA violations becomes moot. As our precedents demonstrate, effective relief is no longer available under these circumstances in a NEPA case.
Because the Mr. Wilson logging project has been virtually completed, requiring the BLM to do a makeover of the EA will not further the purposes of NEPA. NEPA is a forward-looking statute that requires the federal agency to “consider every significant aspect of the environmental impact of a proposed action.” Vt. Yankee Nuclear Power Corp. v. Natural Res. Def. Council, Inc., 435 U.S. 519, 553, 98 S.Ct. 1197, 55 L.Ed.2d 460 (1978) (emphasis added). And we have stated that “the comprehensive ‘hard look’ mandated by Congress and required by the statute must be timely, ... not as an exercise of form over substance, and not as a subterfuge designed to rationalize a decision already made.” Metcalf v. Daley, 214 F.3d 1135, 1142 (9th Cir.2000) (emphasis added).
Here, our injunction will not help any public officials make decisions because those decisions have already been made— there is no proposed action pending. Here, surely, requiring the preparation of a new EA is an exercise of form over substance and all it can do is rationalize a decision, not only already made, but already carried out.
In keeping with the incongruity of deciding the merits in a case in which no effective relief can be ordered, the majority “instructs” the district court “to enjoin the remainder of the Mr. Wilson project until the BLM provides a revised Environmental Assessment, including the required hard look at cumulative impacts of the logging already completed on contiguous habitat areas or neighboring habitat areas to be impacted by contemplated future sales.” Maj. op. at 823. But what is the purpose of requiring the preparation of a hypothetical EA to examine the “cumulative impacts of the logging already completed ”? Further, as I read the majority’s mandate, it does not prohibit the BLM from abandoning, or permitting Herbert Lumber Company to abandon, the project without completing any remaining hand piling and slash burning, if it elects not to prepare a new EA. I assume that such abandonment would leave the project area in a slightly more degraded condition, but without any major environmental consequences.[4] Again, I ask, to what end and *827 for what purpose are we requiring that such a hypothetical injunction be issued.
Finally, I note that the majority mischievously extends NEPA’s environmental review requirement beyond the statute’s original intended purpose. It first notes that “the record in this case reveals BLM preparation for future sales in contiguous or neighboring habitat areas.” Maj. op. at 821. It then orders that the new EA take a hard look at “contiguous habitat areas or neighboring habitat areas to be impacted by contemplated future sales.” Id. at 13 (emphasis added). It cites no authority in support of this startling extension of NEPA. NEPA’s “hard look” requirement is limited to “major federal actions significantly affecting the quality of the human environment.” Klamath-Siskiyou Wildlands Ctr. v. Bureau of Land Mgmt., 387 F.3d 989, 993 (9th Cir.2004) (quoting 42 U.S.C. § 4332(2)(C)). See also 40 C.F.R. § 1508.18 (defining “major federal action”). Unlike the majority’s “contemplated action,” the statutory term “major federal action” is a well-understood (and extensively litigated) term of art under NEPA. No case of which I am aware — and the majority cites none — supports the application of NEPA to contemplated future action. The majority’s imposition of an EA for “contemplated future sales” is thus an unwarranted extension of NEPA.
For all of these reasons, I respectfully dissent from the majority’s conclusion that this case is not moot and its reaching and deciding the merits of this case.

. At the time of oral argument, all that remained to be done was hand piling and slash burning, i.e., minor clean-up. Even that, undoubtedly, has now been completed; however, we do not know for certain because the majority has declined to ask for a current report on the status of the Mr. Wilson project.

. The majority’s reliance on Cantrell v. City of Long Beach, 241 F.3d 674, 678-79 (9th Cir.2001), maj. op. at 821, is also misplaced. Even though Cantrell involved NEPA claims, the marine container terminal project at issue had not yet been completed. While the buildings on the Naval Station had been destroyed and the trees and structures of the station had been razed, construction of the terminal was ongoing, and we noted that "the defendants could consider alternatives to the current reuse plan.” Id. at 678. In the instant case, there is no reuse plan at issue and there are no alternatives that can be considered. Practically speaking, the project is complete and, unlike Cantrell, no effective relief is available.

. The majority’s reliance on Cuddy Mountain II is all the more puzzling given its double-barreled admission that mootness was avoided in that case only "because of relief available under NFMA,” maj. op. at 821, and that "there was no NEPA violation” in that case. Id.

. This assumes, because the majority is determined not to find out the facts, see footnote 1, *827 supra, that the project has not already been completed.