**NORTHWEST ENVIRONMENTAL DEFENSE CENTER, et al., Plaintiffs–Appellants,**

v.

**William G. GORDON, et al., Defendants-Appellees,**

and

**State of Oregon, et al., Defendants–Intervenors–Appellees.**

No. 87–3606.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 3, 1988.

Decided June 23, 1988.

---

Linda K. Williams, Portland, Or., for plaintiffs-appellants.

M. Alice Thurston, U.S. Dept. of Justice, Washington, D.C., for defendants-appellees.

Michael D. Reynolds, Asst. Sol. Gen., State of Or., Salem, Or., for defendants-intervenors-appellees.

Before WALLACE and REINHARDT, Circuit Judges, and HARDY,* District Judge.

REINHARDT, Circuit Judge:

Plaintiffs-appellants Northwest Environmental Defense Center, Oregon Trout, Inc., and Arthur Burns (collectively "NEDC") brought this action against several federal agencies[1] to challenge the management measures governing the 1986 salmon fishing season and the constitutionality of the composition of the Pacific Fishery Management Council. Because the 1986 season concluded before the case was decided, the district court dismissed the case as moot. NEDC appeals from that dismissal. Because we find that NEDC's action is not moot, we reverse and remand the case to the district court for consideration on the merits.

## BACKGROUND

The federal government regulates fisheries under the Fishery Conservation and Management Act of 1976 (Magnuson Act), 16 U.S.C. §§ 1801 *et seq.* (1982). The statute establishes eight regional fishery

---

* Honorable Charles L. Hardy, United States District Judge, District of Arizona, sitting by designation.

1. The State of Oregon and several state officials were allowed to intervene as defendants.

management councils, including the Pacific Fishery Management Council ("PFMC") which encompasses California, Oregon, Washington, and Idaho. *Id.* § 1852(a)(6). The PFMC and the other councils prepare fishery management plans ("FMPs") for the fisheries in their areas that require conservation and management; the FMPs are approved and implemented by the Secretary of Commerce. *See id.* §§ 1852–1855. Amendments to the FMPs undergo the same review and approval process as the FMPs themselves. *See id.* § 1854.

The PFMC formulated a fishery management plan for the ocean commercial and recreational salmon fisheries in 1978; the FMP was approved and implementing regulations were issued by the National Marine Fisheries Service. 43 Fed. Reg. 15629 (Apr. 14, 1978). In 1984, the PFMC amended the salmon FMP by adopting a multi-year management plan for the salmon fisheries, known as the Framework Amendment. 49 Fed. Reg. 43679 (Oct. 31, 1984) (final rule) (codified at 50 C.F.R. Part 661 (1987)). Under the Framework Amendment, certain salmon management measures are fixed and cannot be changed without amending the FMP; others are flexible and can be changed by the Secretary of Commerce annually or during the fishing season in accordance with the procedures set out in the Framework Amendment. 49 Fed. Reg. 32414, 32414 (Aug. 14, 1984) (proposed rule).[2]

**2.** Fixed measures include management objectives, the methods of calculating optimum yields and escapement goals, the basis for allocating between commercial and recreational fisheries, and the procedures for making preseason and inseason changes in the regulations. Flexible measures include the annual allowable ocean harvest levels and quotas, annual allocations, size and daily bag limits, restrictions on gear, and season dates. 49 Fed.Reg. at 32414–15.

**3.** The Framework Amendment provides for modification of escapement goals by the Secretary if a "comprehensive technical review of the best scientific information available provides conclusive evidence which … justifies modification" and if the PFMC so recommends. 50 C.F.R. § 661.22 (1987); *id.* Part 661, App. § IV(B). Escapement goals may also be modified in response to action by a federal court.

The management measures at issue in this case involve coho salmon, which are divided into two groupings or "stocks": Oregon coastal coho, which are largely wild, and Columbia River coho, which are largely hatchery fish. Both these stocks exist in three-year cycles, hatching in fresh waters, maturing in ocean waters, and returning to their native fresh waters to spawn in their third year. The two stocks are managed as one, because they are inextricably mixed in the ocean fisheries. However, the Columbia River stock is managed "for full utilization of hatchery production," while the Oregon coastal stock is managed so as to rebuild the population of naturally-spawning adults. 51 Fed.Reg. 16520, 16522 (May 5, 1986) (1986 fishery management measures). Because that population has been depleted in recent years, the Framework Amendment established a rebuilding schedule for naturally-spawning Oregon coho. Concern was particularly great over the 1986 season, because the parent run in 1983 had been very small due to the unusual environmental conditions known as "El Nino"; thus the number of wild fish returning to spawn in 1986 was expected to be quite low. *Id.*

Under the Framework Amendment's rebuilding schedule, the coho escapement goal for 1986 was set at 170,000. 50 C.F.R. Part 661, App. § IV (1986).[3] However, the 1986 management measures set the quotas for coho salmon so as to achieve estimated escapement of only 142,800. 51 Fed.Reg. at 16522.[4]

50 C.F.R. § 661.22(c) (1987); *id.* Part 661, App. § IV(B)(4). The PFMC apparently intended the requirements for modification of escapement goals to be quite strict; the Framework Amendment as explicated by the PFMC described the escapement goals and rebuilding schedules as "fixed" and noted that the PFMC "considered modifications of the escapement goals to be unlikely." Pacific Fishery Management Council, *Final Framework Amendment for Managing the Ocean Salmon Fisheries off the Coasts of Washington, Oregon, and California Commencing in 1985,* at 3–14 (Oct.1984).

**4.** In 1987, the salmon FMP was amended for the seventh time. 52 Fed.Reg. 4146 (Feb. 10, 1987) (codified at 50 C.F.R. Part 661 (1987)). The so-called "Seventh Amendment" had three purposes: to eliminate the Framework Amendment's fixed escapement goals for coho salmon

## HISTORY OF THE LITIGATION

The 1986 fishery management measures were published on May 5, 1986. On June 4, 1986, NEDC filed a complaint alleging that the measures constituted a *de facto* amendment to the FMP and violated the Magnuson Act, the Framework Amendment, the Coastal Zone Management Act of 1972, 16 U.S.C. §§ 1451 *et seq.* (1982), and the National Environmental Policy Act of 1969, 42 U.S.C. §§ 4321 *et seq.* (1982). NEDC's first amended complaint, dated July 25, 1986, further alleged that the makeup of the PFMC violates the appointments clause of the United States Constitution, U.S.Const. Art. II, § 2, cl. 2. In its claim for relief, NEDC asked that the 1986 measures be declared void; that the Secretary be directed to adopt 1986 measures that would meet the Framework Amendment's coho escapement goal of 170,000; that implementation of any amendments to the FMP be enjoined until statutory requirements were met; and that the district court "order[ ], declar[e] or award[ ] such other relief as the court deem[ed] necessary to repair any damages incurred."

The 1986 salmon season was closed in several stages ending on August 20, 1986. On December 4, 1986, the district court dismissed NEDC's action as moot because the season was already over. The court's order asserted that "no decree by the court granting injunctive or declaratory relief can undo the harvesting of coho salmon that took place during the 1986 season" and that the court could therefore provide no relief on NEDC's claims.

NEDC timely appeals from the dismissal, claiming that its statutory and constitutional claims are not moot because effective relief is still available. Alternatively, NEDC argues that its action falls within the "capable of repetition, yet evading re-view" exception to the mootness doctrine. Because we agree that NEDC's statutory and constitutional claims are not moot, we need not reach the question whether these claims fall within an exception to the mootness doctrine.

## ANALYSIS

 This court reviews a district court's determination of mootness *de novo. Arnold v. United States*, 816 F.2d 1306, 1309 (9th Cir.1987).

 The burden of demonstrating mootness is a heavy one. *County of Los Angeles v. Davis*, 440 U.S. 625, 631, 99 S.Ct. 1379, 1383, 59 L.Ed.2d 642 (1979); *Arnold*, 816 F.2d at 1309. A moot action is one where "the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Murphy v. Hunt*, 455 U.S. 478, 481, 102 S.Ct. 1181, 1183, 71 L.Ed.2d 353 (1982) (per curiam); *Sample v. Johnson*, 771 F.2d 1335, 1338 (9th Cir.1985), *cert. denied*, 475 U.S. 1019, 106 S.Ct. 1206, 89 L.Ed.2d 319 (1986). We have described moot cases as those which have lost their character as present, live controversies. *Lindquist v. Idaho State Board of Corrections*, 776 F.2d 851, 853–54 (9th Cir.1985).

 The basic question in determining mootness is whether there is a present controversy as to which effective relief can be granted. *United States v. Geophysical Corp.*, 732 F.2d 693, 698 (9th Cir.1984). We have pointed out that "courts of equity have broad discretion in shaping remedies." *Garcia v. Lawn*, 805 F.2d 1400, 1403 (9th Cir.1986). Thus, in deciding a mootness issue, "the question is not whether the precise relief sought at the time the application for an injunction was filed is still

and substitute a formula under which the escapement goal is calculated annually based on the abundance of the stock; to increase the flexibility of in-season management provisions; and to modify the coho allocation schedule. *Id.* at 4146. The Seventh Amendment, which was effective as of March 8, 1987, did not alter the procedures for establishing annual quotas or modifying escapement goals. Deviation from the Seventh Amendment's escapement goal formula still requires one of three actions: an amendment to the FMP, an emergency rule, or modification of the escapement goal based on a comprehensive review of the best available scientific information. *Id.* at 4147. NEDC has challenged the Seventh Amendment in a separate lawsuit.

available. The question is whether there can be *any* effective relief." *Id.* (emphasis added).

■ It is clear that the close of the 1986 coho salmon season eliminated the possibility of effective relief that could affect the 1986 harvest. *See Sohappy v. Smith,* 529 F.2d 570, 572–73 (9th Cir.1976). However, NEDC argues that relief for the alleged overfishing in 1986 can take the form of higher escapement provisions and lower quotas in 1989, when the coho spawned in 1986 will return for their own spawning runs.[5] The federal defendants contend that NEDC failed to raise the question of injunctive relief as to the 1989 season in the district court. The plaintiffs are not required, however, to have asked for the precise form of relief that the district court may ultimately grant. *See Garcia,* 805 F.2d at 1403. The relief the plaintiffs initially sought—an injunction against the 1986 measures and the adoption of different measures for that year—was appropriate. They also asked the district court to grant such other equitable relief as it deemed necessary "to repair any damages incurred." That was clearly sufficient. Moreover, contrary to the federal defendants' contention, NEDC did bring the possibility of injunctive relief in 1989 explicitly to the district court's attention. The fact that the district court did not explore this option was not due to any omission on NEDC's part.[6]

■ The 1986 fishery management measures have continuing effects on the population of Oregon coho salmon, and in particular on the number of coho that will be returning to Oregon waters to spawn in 1989 and on their progeny. If the 1986 measures did cause damage to the coho population in violation of federal law, the damage can still be repaired or mitigated—obviously not by restoring the fish harvested in 1986, but by allowing more fish to spawn in 1989. In a case such as this, where the violation complained of may have caused continuing harm and where the court can still act to remedy such harm by limiting its future adverse effects, the parties clearly retain a legally cognizable interest in the outcome. In deciding such a case the court is not merely propounding on hypothetical questions of law, but is resolving a dispute which has present and future consequences. The fact that the alleged violation has itself ceased is not sufficient to render a case moot. As long as effective relief may still be available to counteract the effects of the violation, the controversy remains live and present.

As to NEDC's constitutional claim, it is quite clear that the controversy remains live. NEDC challenges the composition of the PFMC, which has not changed since NEDC's action was filed. The PFMC continues to carry out its responsibilities under the Magnuson Act, and was in no way affected by the close of the 1986 season. Thus this claim, too, is not moot.

Because effective relief may still be available for the alleged overfishing of Oregon coho in 1986, NEDC's statutory action is not moot; nor, for the reasons we have explained, is the constitutional claim. Accordingly, we reverse the district court's dismissal and remand the case to the district court for consideration of the merits

---

5. According to NEDC, 1989 is the appropriate year for relief because of the coho's three-year life cycle. Special protective measures in 1989 will help to preserve the special genetic characteristics of the fish spawned in 1986—which, appellants inform us, are descended from the survivors of El Nino and are therefore particularly hardy fish.

6. The federal defendants also contend that effective relief as to 1989 is not available because federal courts have no authority to order that particular fishery management measures be adopted. Leaving open the question whether such authority exists, we believe effective relief is available. The district court might, for example, order the Secretary or the PFMC to consider any damage caused by the 1986 measures in formulating the 1989 measures, rather than specifying the contents of the 1989 measures. The district court certainly could enjoin the 1989 measures if they failed to do so. There is no need for us to rule now on the propriety of particular kinds of equitable relief that might or might not be granted in the future; it is sufficient to conclude that some form of effective relief is still available.

of NEDC's claims.[7]

REVERSED AND REMANDED.

---

7. As already noted, NEDC has filed a separate action challenging the Seventh Amendment.

We leave it to the district court to decide whether the two actions are best consolidated.