NOT FOR PUBLICATION

## UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

| | | |
|---|---|---|
| In re: | ) | BAP No. CC-10-1408-HPePa |
| | ) | |
| LENNY KYLE DYKSTRA, | ) | Bk. No. SV 09-18409-GM |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| LENNY KYLE DYKSTRA, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | **M E M O R A N D U M**[1] |
| | ) | |
| DAVID K. GOTTLIEB, Chapter 7 | ) | |
| Trustee; JP MORGAN CHASE | ) | |
| BANK, N.A., | ) | |
| | ) | |
| Appellees. | ) | |
| _____ | ) | |

Argued and Submitted on November 16, 2011
at Pasadena, California

Filed - December 8, 2011

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Geraldine Mund, Bankruptcy Judge, Presiding

Appearances:    Joel David Joseph, Esq. argued for the appellant, Lenny Kyle Dykstra.  Robert Huttenhoff, Esq. of Shulman Hodges & Bastian LLP argued for the appellee, David K. Gottlieb, Chapter 7 Trustee.

Before: HOLLOWELL, PERRIS[2] and PAPPAS, Bankruptcy Judges.

---

[1] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

[2] Hon. Elizabeth L. Perris, United States Bankruptcy Judge for the District of Oregon, sitting by designation.

Lenny Kyle Dykstra (the Debtor) appeals the order of the bankruptcy court approving a compromise between the chapter 7[3] bankruptcy trustee, Terri Dykstra[4] and JP Morgan Chase Bank, N.A. (Chase). We DISMISS the appeal as moot.

## I. FACTS

Background

In 2007, the Debtor and his then-wife, Terri Dykstra, entered into a loan arrangement with Washington Mutual (WaMu). Ms. Dykstra executed a promissory note in the amount of $12 million (the Note). The Note was secured by a first priority deed of trust on real property on Newbern Court in Thousand Oaks, California (the Property). WaMu was subsequently taken over by the Federal Deposit Insurance Corporation (the FDIC). In 2008, FDIC sold WaMu's assets to Chase pursuant to a Purchase and Assumption Agreement.

Chase filed a secured proof of claim in the amount of $13.8 million on the outstanding Note. The Property is also encumbered by second and third position trust deeds held by Index Investors (Index). Index asserted a claim in the amount of $936,397 based on two loans it extended to the Debtor. The Property was damaged postpetition. It has not been appraised, but there appears to be no dispute that if Chase and Index hold valid claims, there is no

---

[3] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532. All Rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

[4] Terri Dykstra was ultimately not a party to the Settlement. She joined with the Debtor in his opposition to the Settlement.

equity in the Property. The Debtor asserts, however, that both WaMu and Index engaged in predatory lending practices in conjunction with the Note and violated the Truth in Lending Act (TILA), 15 U.S.C. §§ 1601-1693r., entitling him to damages and claims of setoff or recoupment.

Settlement Agreement

On July 7, 2009, the Debtor filed a petition for chapter 11 relief. On March 23, 2010, the bankruptcy trustee[5] (Trustee) filed a motion for approval of a compromise between the estate and Chase (the Settlement). The Settlement proposed that Chase release the estate of all claims, including its proof of claim, pay the estate $400,000, and relinquish its interest in insurance proceeds the estate received for damages to the Property (totaling $500,000). In exchange, the estate would pay Chase $92,000 for repairs to the Property, stipulate to relief from the automatic stay so that Chase could foreclose on the Property, and release all its claims against Chase.

---

[5] Arturo M. Cisneros was appointed as the bankruptcy trustee. When the case was later converted to a chapter 7, Cisneros continued as the trustee. After Cisneros filed the motion to approve the Settlement, the Debtor filed numerous oppositions and subsequently filed a motion to remove Cisneros based on allegations of partiality and bias. Although the bankruptcy court denied that motion, Cisneros ultimately resigned as the trustee. On August 11, 2010, David K. Gottlieb was appointed the successor chapter 7 bankruptcy trustee.

Gottlieb obtained special counsel to independently examine the terms of the proposed Settlement and to address the merits of the estate's claims against Chase in order to determine if the Settlement would be beneficial to the estate. Based on special counsel's analysis, Gottlieb sought approval of the Settlement on its original terms.

On March 26, 2010, the Debtor filed an objection to the Settlement, contending that the TILA and other claims held by the estate against Chase in connection with the Note were worth millions of dollars and would result in equity in the Property for the benefit of the estate. After months of briefing and hearings, the Trustee submitted an independent analysis prepared by his special counsel, which comprehensively evaluated each of the asserted claims the Debtor argued the estate held against Chase related to the Note, as well as Chase's potential defenses to those claims. The conclusion of the analysis was that the bulk of the claims were either barred by the statute of limitations or subject to various defense theories that would make it difficult for the estate to succeed on the claims.

Prior to a final hearing on the Settlement, the bankruptcy court issued a tentative ruling (Tentative Ruling) applying the factors used in evaluating settlement agreements set forth in Martin v. Kane (In re A & C Props.), 784 F.2d 1377, 1380-81 (9th Cir. 1986), and found that, "while success [in litigating the estate's claims against Chase] is not an impossibility on at least some theories, it is not very probable on any of the theories presented." Furthermore, it found that any litigation on the estate's claims against Chase would be complex, time-consuming, and involve legal theories of first impression in the Ninth Circuit, which could result in appeals, further delaying resolution and increasing litigation costs. Therefore, it concluded that the Settlement would provide a beneficial result for the estate's creditors.

The Settlement hearing was held on October 7, 2010. The

-4-

bankruptcy court entered its order approving the Settlement on October 22, 2010, adopting its Tentative Ruling and additional findings made at the Settlement hearing (the Settlement Order). The Debtor appealed.

## II. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A). We have jurisdiction over final orders under 28 U.S.C. § 158, but address whether the appeal is moot below.[6]

## III. ISSUE

Do we have jurisdiction to decide if the bankruptcy court abused its discretion in entering the Settlement Order?

## IV. STANDARDS OF REVIEW

Our jurisdiction is a question of law that we address de novo. Menk v. Lapaglia (In re Menk), 241 B.R. 896, 903 (9th Cir. BAP 1999). We lack jurisdiction to hear moot appeals. I.R.S. v. Pattullo (In re Pattullo), 271 F.3d 898, 901 (9th Cir. 2001). If an appeal becomes moot while it is pending before us, we must dismiss it. Id.

## V. DISCUSSION

The Trustee contends that this appeal is moot because the Debtor failed to seek and obtain a stay pending appeal and events tethered to the Settlement have occurred that are too complicated

---

[6] The Trustee filed a Motion to Dismiss the appeal with the Bankruptcy Appellate Panel (BAP) on April 8, 2011. The Debtor opposed the motion. On June 16, 2011, the BAP entered an order taking the matter under advisement with consideration of the merits. This memorandum disposes of that motion.

and too far consummated to be undone.  For example, he asserts that other settlements would be affected by a reversal of the Settlement Order.

Prior to entering the Settlement, Cisneros negotiated a compromise on behalf of the estate with Fireman's Fund Insurance Company and Associated Indemnity Corporation (Insurance Company) related to various claims asserted against insurance policies covering the Property after it had been damaged.  The bankruptcy court approved that compromise on May 3, 2010.  The compromise provided that the estate would waive its claims against the Insurance Company in exchange for a payment of $500,000 in proceeds (Insurance Proceeds).  Both Chase and Index had liens on the Insurance Proceeds.

Cisneros also negotiated compromises with both Chase and Index.  Approximately three months after submitting the Settlement for approval, the Trustee filed for the approval of a settlement with Index (Index Settlement).  The Index Settlement resolved claims that the Debtor had brought against Index in state court, prepetition (which were removed to the bankruptcy court postpetition), for the alleged violation of certain lending laws in connection with the loans secured by the Property.  The Index Settlement was approved by the bankruptcy court on July 20, 2010.  It provided that the estate dismiss, with prejudice, the state court action, stipulate to relief from stay to allow Index to proceed with foreclosure on the Property, pay Index $70,000 from the Insurance Proceeds for remediation on the Property, and assign to it claims related to construction defects on the Property.  In exchange, Index released its claim to the Insurance

-6-

Proceeds and waived any claims against the estate, including its $936,397 proof of claim. The Index Settlement was contingent on the approval of the Settlement.

After the Settlement Order was entered, and because no stay pending appeal was sought or obtained by the Debtor, the Trustee took actions to consummate both the Index Settlement and the Settlement. Therefore, the Trustee has dismissed the lawsuit against Index with prejudice, paid Index and Chase from the Insurance Proceeds for repairs to the Property, assigned to Index the estate's claims related to construction defects, and received $400,000 from Chase. Additionally, Index and Chase obtained relief from the automatic stay and Index has since foreclosed on the Property and sold the Property to a third party. Finally, the Trustee distributed payment on various administrative claims related to both of the settlement agreements. The disbursements were made from the remainder of the Insurance Proceeds, which had reverted to the estate after Index and Chase relinquished their liens, as well as from Chase's $400,000 payment to the estate. As a result, the Trustee argues the appeal is now equitably, if not constitutionally, moot.

Constitutional mootness is derived from Article III of the U.S. Constitution, which provides that the exercise of judicial power depends on the existence of a case or controversy. DeFunis v. Odegaard, 416 U.S. 312, 316 (1974); Clear Channel Outdoor, Inc. v. Knupfer (In re PW, LLC), 391 B.R. 25, 33 (9th Cir. BAP 2008). The mootness doctrine applies when events occur during the pendency of the appeal that make it impossible for the appellate court to grant effective relief. Id. The determining

issue is "whether there exists a 'present controversy as to which effective relief can be granted.'" People of Village of Gambell v. Babbitt, 999 F.2d 403, 406 (9th Cir. 1993) (quoting Nw. Envtl. Def. Ctr. v. Gordon, 849 F.2d 1241, 1244 (9th Cir. 1988)). If no effective relief is possible, we must dismiss for lack of jurisdiction. United States v. Arkison (In re Cascade Rds., Inc.), 34 F.3d 756, 759 (9th Cir. 1994).

Additionally, the doctrine of equitable mootness has been applied when the appellant has failed to obtain a stay and although relief may be possible, the ensuing transactions are too complex or difficult to unwind. In re PW, LLC, 391 B.R. at 33. "'Ultimately, the decision whether to unscramble the eggs turns on what is practical and equitable.'" Id. quoting Baker & Drake, Inc. v. Pub. Serv. Comm'n (In re Baker & Draker, Inc.), 35 F.3d 1348, 1352 (9th Cir. 1994).

The Debtor argues that meaningful relief could be provided if the estate repaid Chase the $400,000 and allowed the Debtor to pursue his claims against Chase individually. He argues that upon reversal of the Settlement Order, the claims against Chase for recoupment or set off could be asserted against the proceeds from the sale of the Property. Nevertheless, even if the Debtor is correct that recoupment could still be asserted against the sale proceeds, the Debtor's contention is somewhat simplistic and minimizes the effect of reversal. Indeed, at oral argument the Debtor's counsel conceded that he was unsure how other events could be "unscrambled."

If the Settlement Order were reversed, the estate's claims against Chase might be restored; however, other events could not

-8-

be.  For example, the Index Settlement and the Chase Settlement have been fully consummated.  As a result, the estate has relied on the money from the settlements and used it to pay various administrative expenses.  Those transactions cannot be easily unwound.  Therefore, while relief may not be totally impossible, there has been a "comprehensive change in circumstances" that has rendered it inequitable to consider the merits of the appeal. See Focus Media, Inc. v. Nat'l Broad. Co., Inc. (In re Focus Media, Inc.), 378 F.3d 916, 923 (9th Cir. 2004) (internal citations omitted).  Accordingly, the appeal is moot and beyond our jurisdiction to review.

## VI.  CONCLUSION

For the foregoing reasons, we DISMISS the appeal for lack of jurisdiction.